532 P.2d 933

**DEPARTMENT OF EMPLOYMENT, Plaintiff-Appellant,**

· v.

**ADA COUNTY FAIR BOARD, Defendant-Respondent.**

No. 11591.

Supreme Court of Idaho.

Dec. 27, 1974.

W. Anthony Park, Atty. Gen., R. Lavar Marsh, Raymond N. Malouf, Asst. Attys. Gen., Boise, for plaintiff-appellant.

James E. Risch, Pros. Atty., Ada County, David D. Goss, Chief Deputy Pros. Atty., Boise, for defendant-respondent.

DONALDSON, Justice.

This appeal presents the sole issue of whether the employees of defendant-respondent Ada County Fair Board perform services in "covered employment" under the Idaho Employment Security Law, I.C. §§ 72–1301 to 72–1379. For the reasons expressed below, we conclude that the above described services are not performed in "covered employment" and therefore are exempt from coverage under IC § 72–1316(a)(6). As such, we affirm the decision of the Industrial Commission of the State of Idaho from which plaintiff-appellant Department of Employment brings appeal.

The Ada County Fair Board was established by the legislature pursuant to provisions of I.C. §§ 22–201 to 22–209. Initially, the Board was created for the purpose of operating the Western Idaho Fairgrounds. However, subsequent to the re-emergence of horse racing, it assumed responsibility for operating Les Bois Park.

Pursuant to the above code sections, creation of a Fair Board is entirely discretionary with County Commissioners. Assuming creation is desired, the Commissioners appoint Fair Board members for a term of one year. In the facts at bar, the Board members in turn appointed managers of the fairgrounds and the race track.

Responsibilities of the Board are outlined as follows:

"22–204: *Duties of county fair board— Bonds of members—Meetings—Further*

*duties.*—The county fair board shall be charged with the care and custody of all property belonging to the county and used for fair purposes * * *. Each member of the county fair board shall file with the board of county commissioners a bond in a sum of not less than $1000 to be approved by the board of county commissioners. * * *.

"It shall take charge of and manage all such property as the county may have acquired or set aside for fair purposes pursuant to the provisions of section 31–822. It may recommend to the board of county commissioners that such board purchase such real and personal property as may be needed for fair purposes. It shall have power to employ labor, award prizes, make exhibition contracts, fix and charge admission and entrance fees, and do all other things necessary for holding county fairs. It shall fix the salaries of the secretary and treasurer and prescribe the time and manner of payment. The county fair board shall not have the power to create any indebtedness in excess of the amount to be derived from the special levies for each year and the estimated income from annual fair receipts, nor shall it mortgage or otherwise pledge or encumber any of the real or personal property owned by the county and used for fair purposes."

"22–206. *Budget of funds for county fair purposes—Taxing unit under Idaho Budget Law—Maintenance of idle property.*—For the purpose of determining what funds must be raised by taxes for county fair purposes, the county fair board shall meet * * * and shall make a budget of the amounts required for fair purposes, including all salaries to be paid for the current year, and shall deduct therefrom the probable income from such fair or fairs to be conducted by the board during the current year and any balance remaining in its treasury, and shall then certify to the board of county commissioners the amount of said budget; and the amount to be raised by the county for fair purposes shall in no case be in excess of the difference between the total of said budget and the probable income of such fair and the balance on hand in the treasury. The board of county commissioners shall thereafter approve or make such amendments or modifications in the county fair budget as it deems proper, and include the same in its annual county budget. No levy for the purposes of this act shall exceed one-half (½) mill on each dollar of assessed valuation of taxable property in the county. When such taxes have been collected, the same shall be paid to the treasurer of the county fair board to be used for the purposes authorized by this act. Such special levy, together with any other special levy made pursuant to the provisions of section 31–823, shall in no case exceed one (1) mill on each dollar of assessed valuation of taxable property in the county. Upon the creation and appointment of the fair board by the county commissioners, it hereby becomes a taxing unit under the provisions of the Idaho Budget Law and as such is empowered to issue tax anticipation notes or warrants as provided by law for maintaining, carrying on, conducting, payment of obligations, premiums, prizes and all other necessary expenses, incurred or to be incurred in conducting a fair. * * *."

"22–207. *Disposition of moneys remaining after fair conducted.*—Any moneys remaining on hand after a county fair has been conducted within the county pursuant to the provisions of this act shall not be paid into the general fund of such county, but shall be retained in the custody of the treasurer of the county fair board, and may be used in the conduct of a county fair in the succeeding year or years; provided, however, that such moneys shall be paid into the general fund of the county upon order of the board of county commissioners in case the board of county commissioners shall at any time discontinue the holding of annual county fairs."

Upon consideration of the above, the Industrial Commission ruled that the Ada County Fair Board was not an institution or instrumentality separate or apart from Ada County. As such, it was considered an administrative division of county government and exempted from coverage under I.C. § 72–1316(a)(6). That section reads in pertinent part as follows:

"72–1316. *Covered employment.*—(a) The term 'covered employment' means an individual's entire service, including service in interstate commerce, performed by him for wages or under any contract of hire, written or oral, express or implied, except—

\* \* \* \* \* \*

(6) Service performed in the employ of any public institution or instrumentality which acquires its operating funds primarily through direct or indirect taxation, including but not limited to, counties, municipalities, highway districts, drainage districts, cemetery districts, and school districts; provided, however, that service performed in the employ of irrigation districts and soil conservation districts shall be considered covered employment;

\* \* \*."

The appellant contends that the Industrial Commission erred in concluding that the Fair Board is merely an administrative division of county government, integral and inseparable from the county as an employer, and therefore not a separate institution or instrumentality for purposes of the Employment Security Law. In addition, error is asserted in the Commission's failing to interpret the exemption in I.C. § 72–1316(a)(6) to require not only employment by a public institution or instrumentality, but also that operating funds of such employer be obtained primarily through taxation.

In support of its first assigned error, the appellant alleges that because of fiscal independence, a separate budget, separate accounting and the failure of the Ada County Fair Board to return to Ada County excess moneys at the conclusion of the fair, there is a sufficient separation to conclude that the Ada County Fair Board is a separate employer. We disagree.

■ Ada County Fair Board's fiscal policy does not differ from other county agencies. Each agency submits a budget to the County Commissioners for the fiscal year. That fiscal function does not in and of itself make any county agency independent of the county for employment reasons. The appellant next relies upon the argument of a separate budget. Once again, all county agencies have a separate budget which is submitted to the County Commissioners for their approval each year. The Ada County Fair Board is no different in that their budget is carried as a line item with the county and must be approved by the County Commissioners. The appellant next relies upon the fact that the Ada County Fair Board does its own accounting and keeps its own books. Again, each county agency carries out this function although not to the extent of the Fair Board. However, the fact that the Ada County Fair Board keeps its own books is more of a convenience factor than a point to be brought out to reinforce the position that the Board is separate and apart from Ada County. Finally, the appellant puts great emphasis upon the argument that the Ada County Fair Board does not return surplus moneys to the Ada County General Fund at the end of the fiscal year. According to I.C. § 22–207 as set forth above, the Fair Board must retain any surplus moneys to be used for the following year. However, if the Commissioners decide to discontinue the holding of annual county fairs, those moneys shall be paid into the general fund upon order of the Board of County Commissioners.

■ The entire system of financing the fair points to the fact that ultimate control is vested in the County Commissioners. The Fair Board submits a proposed budget to the Commissioners who in turn make alterations as they see fit. The Commissioners then determine how much of a tax levy

**594**

should be imposed to generate primary funds for the fair. The appellant alleges that the Board has operated primarily from funds received from receipts other than tax levies the last several years. As such, the issue of separability is again argued. The fact that a larger portion of the total money used to operate the fair comes from non-tax sources does not in any way make the Fair Board a separate entity from Ada County. It is the method which the state legislature determined was most appropriate to support such an activity.

The County Commissioners of Ada County still retain ultimate control of the Fair Board's budget and ultimate control over the Fair Board's very existence, I.C. § 22–207. Statutory authorization for the Fair Board, the inclusion of the Fair Board in the county budget, the power of selection of Fair Board members being vested in the County Commissioners, the fact that Fair Board fiscal procedure does not differ materially from any other county agency, and the fact that the discontinuance of the county fair would necessitate all excess money being deposited in the county general fund all point to the conclusion that the Ada County Fair Board is inseparable from Ada County. As such, services performed by the Ada County Fair Board are performed in the employ of Ada County and therefore exempt under I.C. § 72–1316(a)(6).

The appellant next contends that the Industrial Commission erred in failing to interpret the exemption in I.C. § 72–1316(a)(6) to require not only employment by public institution or public instrumentality, but also that operating funds of such employer be obtained primarily through direct or indirect taxation. This argument is premised upon appellant's first assigned error that the Ada County Fair Board is not an administrative division of Ada County. In light of our opposite holding, we need not determine the issue. As an inseparable part of Ada County, services performed by the Fair Board *ipso facto* are performed in the county's employ. Clearly, Ada County

qualifies for exemption under I.C. § 72–1316(a)(6) as a public institution (I.C. § 31–601) acquiring its operating funds primarily through direct or indirect taxation. Therefore, respondent Ada County Fair Board qualifies for exemption as an inseparable part of Ada County.

Order affirmed. Costs to respondent.

SHEPARD, C. J., and McQUADE, BAKES and McFADDEN, JJ., concur.